HICKS *v.* JOHNSON.

4-5054

Opinion delivered May 2, 1938.

*E. L. Holloway,* for appellant.
*Walter L. Pope* and *Eugene Sloan,* for appellee.

SMITH, J. Thomas J. Miller was a mentally incompetent World War veteran, and appellee was the guardian of his person and the curator of his estate. The appointment of appellee as such appears to have been made pursuant to act 36 of the Acts of 1929 (Vol. 1, Acts of 1929, p. 58), entitled, "An Act concerning the Guardianship of Incompetent Veterans and of Minor Children of Disabled or Deceased Veterans, and the Commitment of Veterans and to Make Uniform the Law with reference thereto." This act appears as § 6318 to § 6337, both inclusive, of Pope's Digest.

Miller, the ward, appears to have had no estate except the pension and bounties which he received from the Federal Government. He was afflicted with both tuberculosis and syphilis, and his condition required the employment of one or more nurses to care for him. At the suggestion and with the approval of the representative of the Veterans' Bureau the probate court directed the guardian to employ a nurse.

The guardian made three annual reports to the probate court, showing payments by the Federal Government and the disbursements thereof, and a fourth and final settlement was filed by appellee after Miller's death December 5, 1934. The date of the filing of this settlement does not definitely appear, but it was duly approved at the November, 1935, term of the probate court after certain exceptions thereto, hereinafter to be discussed, had been overruled. Upon appeal to the circuit court the settlement was again approved, and from that judgment of the circuit court is this appeal.

The exceptions were filed by Effie Hicks, a sister of Miller, who had been appointed administratrix of Miller's estate October 7, 1935. The exceptions filed questioned a number of credits claimed by the guardian, but by stipulation the exceptions were confined to four items as follows: (1) $229 paid to Raymond L. Cavens February 2, 1935, for services as nurse and caretaker of the veteran; (2) $20 paid to Roy C. Robinnette February 2, 1935, for similar services; (3) $15 charged December 6, 1934, for expenses of guardian in connection

with the ward's funeral at Doniphan, Missouri, where the ward died and was buried; (4) eight checks for $142.15 each representing sums paid to the brothers and sisters of the deceased ward as his next of kin and heirs-at-law.

Considering these items in reverse order, the eight checks represented the balance of money on hand after all other charges against the ward's estate had been paid. That the total amount of these checks does represent the entire balance is a fact not disputed, nor is it denied that the parties named in the checks were the ward's heirs-at-law. The persons entitled to share in the distribution of this estate have done so.

When Miller died it was not known whether he had any relatives, or, if so, where they were. He had never married. Appellee went to Doniphan to make inquiry about relatives and to superintend the funeral. The expense of $15 incurred on that account appears to be a proper charge, for which credit should be and was allowed.

The other two items represent necessary services rendered to the ward in his lifetime, and were obligations which the guardian had incurred under the direction of the representative of the Veterans' Bureau and with the approval of the probate court.

It is not questioned that these items—all of them—should be paid. The insistence is that they should have been paid by the administratrix, and not by the guardian, and that the guardian should have disbursed no money after the death of his ward, but should have turned over to the administratrix all funds in his hands. The position of the administratrix is stated in her brief as follows: "We take the position that a guardian had no authority to pay demands made against the estate of his ward, after the death of the ward and that he should have immediately filed his settlement and paid over the assets to the legal representative of the estate of the ward, whose duty it would be to allow or disallow claims as presented to the administrator and pay only such claims as were allowed by the probate court. When this

has been done then it was his or her duty to determine who were the heirs and distributees and upon approval of the probate court, pay out the balance, after all claims were paid, to them.''

In support of this contention § 7567, Pope's Digest, is cited. It reads as follows: ''In case of the death of any such ward while under guardianship, the power of the guardian shall cease, and the estate descend and be distributed in the same manner as if such ward had been of sound mind, or correct habits, and the guardian shall immediately settle his accounts, and deliver the estate and effects of his ward to his legal representative.''

It appears, from the facts stated, that appellee incurred no obligation against the estate of his ward except an item incident to the burial of the ward, and he paid no bills except those for nursing, which were, of course, incurred in the lifetime of the ward, and these were paid at a time when there was no administration, and apparently no necessity therefor. There was no reason why the estate might not have been closed under the provisions of § 1, Pope's Digest, as was done. Demand was made upon the guardian for the distribution of the money in his hands, and he made the distribution and made report thereof in his final settlement filed during the month of July, 1935. He did this upon the advice of the judge of the probate court and the representative of the Veterans' Administration. The latter testified that, as the representative of the Veterans' Bureau, he waived the requirement that might have been exacted that an administrator be appointed, to whom the balance in the hands of the guardian would have been paid, and approved the payment and distribution of this residue to the various heirs of Miller, as shown in the final settlement.

Three months after this distribution had been made one of the distributees, who had received and receipted for her proportionate share, qualified as administratrix of her brother's estate, and now seeks to undo what she had participated in doing. It is true, as appellant insists, that the necessity for an administration will not be

inquired into in a collateral proceeding. But the judgment here appealed from does not affect her status as administratrix. She is still administratrix, but, even so, there appears to be no necessity for the circumlocution which would be involved by undoing what has already been done with the administratrix's consent and to the advantage of all the other heirs—to that of the administratrix as well as to the others except only as to the fees of which she will be deprived.

It would be as inequitable as it is unnecessary to re-open the guardian's account and require him to pay the money to the administratrix, which, after it had been paid, would be disbursed just as it has already been.

In the chapter on Courts in 15 C. J., p. 1014, it is said: "While probate courts are not, generally speaking, courts of equity, and, therefore, do not possess general equity powers, in matters which fall within their jurisdiction they do possess many of the powers usually exercised by courts of equity, and are authorized to apply the rules and principles of equity and to proceed in many respects after the manner of courts of equity. Such limited equity jurisdiction does not, however, divest other courts of general equity jurisdiction of their jurisdiction in the same matters."

The probate court was not without jurisdiction to do what was here done, and § 7567, Pope's Digest, quoted above, which appellant cites and upon which she relies for the reversal of the judgment, has, in effect, been complied with by closing the guardianship and ordering the guardian to deliver the effects of his ward to his heirs-at-law.

The judgment is correct, and is, therefore, affirmed.